UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,
*ex rel.* Mindy Westlund, *et al.*,

     Plaintiffs,

v.                                      CASE NO.: 8:10-cv-2882-T-23TGW

LABORATORY CORP. OF AMERICA
HOLDINGS, *et al.*,

     Defendants.

_____/

## ORDER

     Mindy Westlund sues Laboratory Corporation of America ("LabCorp"), a

clinical laboratory, for violating the federal False Claims Act and the Florida

Whistleblower Act.  According to Westlund (a LabCorp salesperson), LabCorp

falsely promises doctors that a large private insurer will pay for a LabCorp medical

test.  Allegedly, after the private insurer refuses to pay for the test Medicare

sometimes pays instead.  A December 29, 2011, order (Doc. 38) dismisses

Westlund's second amended complaint because, among other reasons, Westlund

never explains how LabCorp's lying to a doctor prompts a false claim against the

federal government.  The third amended complaint ("the complaint") (Doc. 42)

alleges only that LabCorp retaliated against Westlund for whistleblowing.  LabCorp

moves (Doc. 45) to dismiss.

The Fraud Enforcement and Recovery Act ("FERA"), 123 Stat. 1617, 1624-25 (2009), amends the False Claims Act's retaliation clause, 31 U.S.C. § 3730(h), although the amendment affects conduct occurring only on or after May 20, 2009. LabCorp's allegedly wrongful acts began by early 2008 and continued until at least May 2009. Whether or when the alleged conduct ceased is obscure. Westlund therefore invokes only the old Section 3730(h), which states:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee . . . in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

Section 3730(h) protects an employee only if pursuing a potential claim under Section 3729 and only if the employer knows that a *qui tam* action might arise from the employee's acts. *Hoyte v. Am. Nat. Red Cross*, 518 F.3d 61, 66-70 (D.C. Cir. 2008) ("the relator must [investigate] matters that reasonably could lead to a viable False Claims Act case"); *McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 516-17 (6th Cir. 2000) ("internal reporting may constitute protected activity, [but] the internal reports must allege fraud on the government"); *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 422-23 (D.C. Cir. 2005) ("an employee does not engage in protected conduct if he merely informs a supervisor of the problem"); *Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 733 (7th Cir. 1999) ("[mere] saber-rattling is not protected conduct"); *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994) ("the

employee [must notify] the employer that she [i]s concerned about the company

defrauding the government"); *see also Childree v. UAP/GA CHEM, Inc.*, 92 F.3d 1140,

1145-46 (11th Cir. 1996).

The complaint describes Westlund's pre-suit alarums as follows:

> Beginning in 2008 Plaintiff questioned Regional Manager, Thomas
> Napolitano concerning his direction to Plaintiff, as well as all Florida
> sales representatives that they should fraudulently represent to LabCorp.
> customers that the LabCorp had an existing contract with Blue Cross
> and Blue Shield of Florida(BCBSF) when this was clearly false.
> . . . .
> Regional Manager, Thomas Napolitano did not appreciate Westlund's
> questions and opposition, and would threaten her whenever she would
> raise concerns with regard to this fraudulent scheme.  In one instance in
> 2008 Regional Manager, Thomas Napolitano threatened Plaintiff by
> telling her, that if she did not follow directions, and refrain from further
> questioning, it could affect her revenue, or she would be let go.
> Following this threat, in September 2008, Plaintiff received a phone call
> from an auditor from North Carolina.  The auditor was conducting an
> audit on LabCorp accounts; the auditor questioned Plaintiff regarding
> one of her accounts that had a tremendous drop in revenue.  Plaintiff
> explained to the auditor that, the client on that account had decided to
> send his patients to another laboratory, due to fear of fraudulent BCBSF
> billing.  After Mr. Napolitano found out that Plaintiff had spoken to the
> auditor Me. Napolitano called her and while yelling at her he threatened
> her by stating that if she would not "*shut up*", she would be fired.
>
> On May 2009, Plaintiff sent an e-mail to Managers, Terry Farrel,
> Thomas Napolitano and Kim Lomelo, questioning LabCorp's billing
> higher out of pocket cost to patients due to BCBSF Out- of- Network
> coverage being less than In-Network and by lying to them regarding
> BCBSF In-Network status they are misleading clients and patients.
> Terry Farrell, responded by screaming at her, and warning her to "stay
> *out of it*".

(Doc. 42, Ex. 1 at 4-5) (emphasis and errors in original).

Westlund never alleges that she investigated potential fraud under the False

Claims Act (or that she investigated anything), never alleges that she expressed

concern to LabCorp about potential fraud against the government, and never alleges

that she told LabCorp about the possibility of a *qui tam* action.  What Westlund said

to her employer remains indefinite – she alleges only that she "questioned" and

"raised concerns."  Nothing in the complaint shows that LabCorp knew of

Westlund's protected conduct before the unsealing of this *qui tam* action in June,

2011.  In fact, besides the filing of this action, the complaint alleges no protected

conduct.  Consequently, no purported threat or harassment by LabCorp before June,

2011, violates Section 3730(h).

The complaint alleges also, however, that Westlund suffered retaliation after

this action was unsealed:

> In Mid-2011, Plaintiff was written up by Ms. Ruiz due to not meeting
> quota.  Plaintiff explained this was due to one client going out of
> business, while another had pulled all work from LabCorp after
> LabCorp did not follow through in paying for electronic medical record
> system for that client.  She also explained that Mr. Napolitano did not
> want to assign her any new accounts and that is why she did not have
> new clients.  Ms. Ruiz made it clear she was "*not interested*" and could
> have no opinion regarding Plaintiff accounts since they were still under
> Mr. Napolitano's management.
>
> On September 29, 2011 after Plaintiff was asked to adjust some pricing
> for Vista Laboratories, Plaintiff e-mailed Ms. Ruiz and questioned the
> billing procedures and asked if it was "*against guidelines to lower a labs cost
> lower than Medicare and Medicaid*."  Ms. Ruiz never responded.
>
> On October 20, 2011 Ms. Aleida Ruiz called Plaintiff to advise her that
> the "Vista Laboratories" account had been transferred to a new sales
> representative.  During Plaintiff's management of the Vista Laboratories
> account, she never had a Complaint or a negative remark from that
> client.  On various occasions the CFO of Vista Laboratories, Kevin
> Connors praised Plaintiff for her hard work.  Plaintiff believes this
> account was removed to retaliate against her as a result of her protected

> conduct.  The removal of this account from Plaintiff has caused her a
> loss of commission and income.

(Doc. 42, Ex. 1 at 6) (emphasis and errors in original).  If the trivial slights in the first two paragraphs are discarded, a claim for retaliation might nonetheless arise from the reduction of Westlund's workload.

To plead retaliation Westlund must allege the pursuit of a potential action under the False Claims Act.  The one authority that Westlund cites in support of her Section 3730(h) claim, *Graham County Soil & Water Conservation District v. United States ex rel. Wilson*, 545 U.S. 409 (2005), says nothing to the contrary.  *Graham* states that Section 3730(h) "protects an employee's conduct even if the target of an investigation or action . . . was innocent," but *Graham* also acknowledges that Section 3730(h) requires an employee to act "in furtherance of" an action under the False Claims Act. 545 U.S. at 416 & n.1; *see Hoyte* 518 F.3d at 69.

Although the Section 3730(h) claim survives Westlund's failure to plead fraud with particularity, the Section 3730(h) claim succumbs to Westlund's more basic failures.  Westlund never cites which subsection of Section 3729 LabCorp supposedly violated.  Westlund never establishes "the direct link between [a] false statement and the Government's decision to pay or approve a false claim." *United States ex rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791, 799-800 (8th Cir. 2011).  Westlund never explains (as an order warns her she must) how "LabCorp's lie and the government's payment for a valid service amounts to fraud actionable under the False Claims Act." (Doc. 38

at 2)  In sum, Westlund never shows – never attempts to show – the reasonableness of her novel and tenuous theory of liability under the False Claims Act.[*]

The motion (Doc. 45) to dismiss is **GRANTED**, Westlund's Section 3730(h) claim (Count I) is **DISMISSED WITH PREJUDICE**, supplemental jurisdiction over Westlund's state law whistleblower claim (Count II) is **DECLINED**, and this action is **DISMISSED**.  The clerk is directed to terminate any pending motion and close the case.

ORDERED in Tampa, Florida, on April 24, 2012.

*Steven D. Merryday*
_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[*] FERA amends Section 3729.  123 Stat. 1617, 1621-22.  Like the analogous old Section 3729(a)(2), the new Section 3729(a)(1)(B) requires Westlund "to link the alleged false statements to the government's decision to pay false claims."  *Vigil*, 639 F.3d at 800 (quoting *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1330 (11th Cir. 2009)); *see also United States ex rel. Sanders v. Alison Engine Co., Inc.*, 667 F.Supp.2d 747 (S.D. Ohio 2009); J. Boese, CIVIL FALSE CLAIMS AND QUI TAM ACTIONS § 1.09[A][6] (4th ed. 2011).